IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| RYAN RUSH *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ANTONIO ARAGON II *et al.*,<br><br>Defendants. | 2:26-CV-036-Z |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Motion to Dismiss ("Motion"), filed September 1, 2026. ECF No. 52. After the Court ordered expedited briefing, Plaintiffs Dr. Ryan Rush and Ryan B. Rush, M.D., PA. ("Plaintiffs") responded on September 9, 2026. ECF No. 61. Defendants replied on September 11, 2026. ECF No. 62.[1] The Motion is now ripe. Having reviewed the Motion, briefing, and relevant law, the Motion (ECF No. 52) is **DENIED**.

**BACKGROUND**

On July 29, 2014, Plaintiff Dr. Rush formed Ryan B. Rush, M.D., P.A. ("Rush P.A.") under Texas law by filing a certificate of information with the Texas Secretary of State. ECF No. 52-2 at 19–20. Years later, on May 7, 2025, Rush P.A. was admitted as a limited partner to Panhandle Eye Group, LLP ("Panhandle Eye") when it acquired 19.1 percent interest in the entity. *Id.* at 102.

On August 1, 2014, Dr. Rush entered into an agreement with Antonio V. Aragon II, M.D., P.A. ("Aragon P.A.") and J. Edward Ysasaga M.D., P.A. ("Ysasaga P.A.") to sell a portion of their interests in Southwest Retina Specialists ("SRS") to Dr. Rush for $1,074,280.82. *Id.*

[1] Defendants inadvertently filed a reply over the page limit and filed a motion for leave to file a compliant brief. ECF No. 63. The Court granted this motion on September 28, 2026. ECF No. 67. The Defendants reply was then filed at ECF No. 68.

at 70–71. This amount entitled Dr. Rush, Aragon P.A., and Ysasaga P.A. each to hold 1/3 interest in SRS. *Id.*

Over the years, Dr. Rush's personal and professional relationship with Drs. Aragon and Ysasaga deteriorated. ECF No 61 at 15. In the spring of 2017, Dr. Rush stated that Dr. Ysasaga phoned him while he was at church, yelling expletives. *Id.* In 2019, Dr. Rush sat down with both doctors to "discuss mal-distribution of patient referrals to the practice, including referrals sent to the practice from my father Dr. Avery Rush and my brother Dr. Sloan Rush, both ophthalmologists within the community who wanted me to receive their referrals." *Id.* According to Rush, "Dr. Ysasaga berated me over this issue in front of everyone else in the meeting by saying that I was incompetent and that he was a much better doctor than me." *Id.* By 2024, Dr. Rush claims the doctors "continued to exclude me from the practice's ongoing business decisions" and that he "knew that [he] could not remain in practice with them for much longer." *Id.* During this time, he and his wife decided they were going to relocate to Florida. *Id.* at 16. In November 2024, Dr. Rush applied for a Florida medical license. *Id.*

In March 2025, Defendants Aragon and Ysasaga began investigating concerns regarding Dr. Rush's medical practice and his compliance with applicable patient-care protocols. ECF No. 52-1 at 6. On April 30, 2024, Dr. Rush performed a medical procedure on a patient that generated significant controversy with Drs. Aragon and Ysasaga. ECF No. 61 at 16. According to Dr. Rush's Declaration:

> The practice surgery center's nurse anesthetist wanted to cancel a patient's surgery because the patient had recently been on the medication Mounjaro and the nurse anesthetist was concerned that administering the sedative propofol could result in an increased risk of aspiration. Rather than cancelling the patient's surgery, I felt it was medically safe to forego the administration of the sedative Propofol (to remove the potential risk of aspiration) and just use local anesthesia without sedation to perform the patient's surgery. The procedure went well and the patient had a positive outcome with improved vision by her 2-week follow-up appointment.

*Id.* At the next regularly scheduled practice business meeting, on May 6, 2024, Dr. Rush says he was "accosted" by the doctors who "yelled and screamed obscenities" at him for his recklessness. *Id.*

On May 8, 2025, Drs. Aragon and Ysasaga presented Dr. Rush with a pre-drafted resignation letter and told him not to return. *Id.* at 17. Dr. Rush did not sign the letter. *Id.* Instead, on May 20, 2025, Dr. Rush emailed revised departure materials to his brother, Dr. Sloan Rush, to share with his partnerships. *Id.* at 55. The materials were to be effective on July 1, 2025, and specifically addressed SRS, Panhandle Eye, and other practice entities. *Id.*

On February 18, 2026, Dr. Rush filed the original complaint in the instant case. ECF No. 1. The next day, on February 19, 2026, Rush P.A. filed articles of conversion with the Florida Secretary of State. *Id.* at 40–41. On February 23, 2026, Rush P.A. joined with Dr. Rush as a plaintiff and filed an amended complaint. ECF No. 6. Additional parties were also included as defendants. *Compare* ECF No. 1 at 1, *with* ECF No. 6 at 1.

On September 1, 2026, Defendants filed the instant motion asserting the Court lacks diversity jurisdiction. ECF No. 52.

## Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may seek dismissal of an action for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Federal courts have limited jurisdiction. They "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). Thus, a plaintiff "must make 'clear, distinct, and precise affirmative jurisdictional allegations'" in pleadings. *SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023) (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988)). A court must consider a jurisdictional challenge "before addressing any

attack on the merits." *See In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."). Under a 12(b)(1) motion, a court may dismiss for lack of subject-matter jurisdiction on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). The party claiming subject matter jurisdiction bears the burden of proof to show it is there. *Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020). The party bears the burden because courts "presume[] that a cause lies outside [their] limited jurisdiction." *Kokkonen*, 511 U.S. at 377. Jurisdiction cannot be satisfied "argumentatively or by mere inference." *Ill. Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 (5th Cir. 1983).

28 U.S.C. Section 1332 permits a federal district court to exercise jurisdiction over a case if the parties are diverse and the amount in controversy exceeds $75,000. "The basis for diversity jurisdiction must be 'distinctly and affirmatively alleged.'" *Dos Santos v. Belmere Ltd. P'ship*, 516 F. App'x 401, 403 (5th Cir. 2013) (per curiam). Failure to adequately allege diversity jurisdiction's basis "mandates dismissal." *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991).

## ANALYSIS

### I. Dr. Rush and Rush P.A. withdrew their partnerships with SRS and Panhandle Eye before the February 23, 2026 complaint.

To establish diversity jurisdiction against a partnership, jurisdiction "depends on the citizenship of 'all the members.'" *Carden v. Arkoma Associates*, 494 U.S. 185, 195 (1990). Defendants argue "[b]ecause Plaintiff Ryan Rush is alleged to be a partner of Defendant SRS,

SRS shares Rush's citizenship. Likewise, because Plaintiff Rush PA is alleged to be a partner of Defendant Panhandle Eye, Panhandle Eye shares Rush PA's citizenship." ECF No. 52-1 at 9.

The Court rejects Defendants' argument. Texas law governs whether Dr. Rush and Rush PA withdrew their partnerships with SRS and Panhandle Eye respectively. According to Chapter 152 of the Texas Business Organization Code, "[a] person ceases to be a partner on the occurrence of an event of withdrawal." § 152.501(a). This can occur when the partnership receives "notice of the partner's express will to withdraw as a partner on: (A) the date on which the notice is received; or (B) a later date specified by the notice[.]" TEX. BUS. ORGS. CODE § 152.501(b)(1). Accordingly, a partnership is withdrawn when it receives receipt of an expression of withdrawal from a party.

Plaintiffs withdrew from their partnerships on May 20, 2025. On that day, Rush sent the following email to share with SRS and Panhandle Eye:

> To the Stakeholders of Panhandle Eye Group (PEG), Southwest Retina Specialists (SRS), Amarillo Cataract and Eye Surgery Center, and Panhandle Eye Subspecialists (PESS),
>
> This is notice that I will be closing my practice and interest in the above entities effective July 1, 2025. May this letter act to initiate the buy-out directives outlined in the various partnership agreements for a departing partner.

ECF No. 61 at 55.

This letter—not discussed in either Defendants' Motion or Reply Brief—serves as notice of Dr. Rush's express will to withdraw as a partner from both SRS and Panhandle Eye. The withdrawal was effective on July 1, 2025, the date specified in the message. *See* TEX. BUS. ORGS. CODE § 152.501(b)(1)(B). The original complaint was filed on February 18, 2026. ECF No. 1. Because Rush withdrew from the partnership long before the complaint was filed,

the Court finds the ongoing partnerships do not adopt the citizenship of Rush as required under *Carden*. 494 U.S. at 195.

**II. Dr. Rush and Rush P.A. are citizens of Florda.**

While Dr. Rush and Rush P.A. may have been withdrawn from the partnerships, the Court still must assess whether they are citizens of Florida for the purposes of diversity jurisdiction.

The Court finds Dr. Rush is a resident of Florida. The Supreme Court established the following test for identifying an individual's domicile:

> In determining a litigant's domicile, the court must address a variety of factors. No single factor is determinative. The court should look to all evidence shedding light on the litigant's intention to establish domicile. The factors may include places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family. A litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts.

*Court v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996) (citations omitted).

An assessment of the factors listed in *Court* establish Dr. Rush is a citizen of Florida. Rush has his voter registration in Florida. ECF No. 61 at 116. He applied for a Florida medical license in November 2024 and received it in March 2025. *Id.* at 16, 47. In July 2025, Rush and his wife began leasing a home in Vero Beach, Florida and maintained it through the filing of this lawsuit. He insured the residence and established residential internet service that same month. *Id.* at 118–22. His joint bank statements use his Florida address. *Id.* at 124. He joined the Florida Medical Association in July 2025 and has not practiced medicine in Texas since May 23, 2025. *Id.* at 18, 126. He received his Florida driver's license on August 4, 2025. *Id.* at 114. When this suit was filed, Rush regarded Florida as his permanent home. *Id.* at 23.

True, Dr. Rush owns a house in Amarillo, Texas, but he and his wife entered into a contract with Keller Williams in July 2025 to sell the property. *Id.* at 21. The property has been listed for sale since August 2025—and Dr. Rush has been living in Florida throughout that time. *Id.* While Dr. Rush's March 2025 medical license listed his Amarillo address as his "address of record," this was before he made the move to Florida. ECF No. 52-2 at 103. It also demonstrates he was seeking a Florida license almost *a year* before the complaint was filed. Balancing all these facts together establishes Rush is domiciled in Florida.

As for Rush P.A., Texas law defines professional associations separately from professional corporations. TEX. BUS. ORGS. CODE § 301.003(2)–(3). As unincorporated entities, professional associations take on the citizenship of their members as required under *Carden*. 494 U.S. at 195; *accord Americold Realty Tr. v. ConAgra Foods, Inc.*, 577 U.S. 378, 383 (2016) ("So long as such an entity is unincorporated, we apply our 'oft-repeated rule' that it possesses the citizenship of all its members."). Rush P.A.'s only member is Dr. Rush, who is a citizen of Florida. ECF No. 61 at 13. Thus, Rush P.A. takes Dr. Rush's Florida citizenship.

The Court has not seen any evidence suggesting any Defendant is a citizen of Florida. Thus, the Court finds there is no overlap in citizenship in this case.

### III. Plaintiffs have not improperly manufactured diversity jurisdiction in violation of 28 U.S.C. Section 1359.

Section 1359 provides: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." This statute is "designed to prevent the litigation of claims in federal court by suitors who by sham, pretense, or other fiction acquire a spurious status that would allow them to invoke the limited jurisdiction of federal courts." *Nolan v. Boeing Co.*, 919 F.2d 1058, 1067 (5th Cir. 1990).

Defendants claim Rush P.A. operated as a Texas professional association until February 19, 2026, only four days before the amended complaint was filed. Defendants contend the articles of conversion filed with the Florida Secretary of State on this day changed Rush P.A.'s citizenship. ECF No 52-1 at 7 (citing ECF No 52-2 at 118). At a minimum, Defendants state the Court must allow jurisdictional discovery to determine whether diversity has been manufactured. But Ryan Rush and Rush P.A. took Florida citizenship well before the date the complaint was filed on February 19, 2026. Most of the factors courts review to establish a party's domicile had taken place before the summer of 2025. There is no need for jurisdictional discovery when the evidence points so clearly to Florida citizenship.

CONCLUSION

For the forgoing reasons, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 52).

**SO ORDERED**.

October 6, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE